The construction of the will of Minnie Marie Giegold is sought in this suit. Testatrix at the time of her death held a mortgage of complainant in the amount of $5,000. The question at issue is as to whether by the second paragraph of her will she canceled this mortgage.
The second paragraph of the will reads as follows:
"I hereby cancel, annul and forgive any and all indebedness to me, especially that sum of four thousand five hundred ($4,500) dollars which I advanced to my beloved sister, Selma Ludwig, who has since departed this life and which said advance and loan was made by me to her on or about October 15th, 1924, in the sum of four thousand five hundred ($4,500) dollars and I do order and direct my said executors to give a release or such other instrument as may be necessary to cancel and discharge the said obligation and that this order and direction by me made shall cancel the recital set forth in a certain deed made by John Ludwig et al., dated June 20th, 1925, and recorded in the office of the register of the county of Hudson, on August 4th, 1925, in book 1571 of deeds for said county, at page 349, and which said deed was made to Charles Sanders and subsequently the said Charles Sanders and Lilly Sanders, his wife, did convey the said premises to me by deed dated July 20th, 1925, and recorded in the register's office of the county of Hudson on August 4th, 1925, in book 1571 of deeds for the county of Hudson, at page 351, and the premises as and by the street numbers 913 and 915 Savoye street, in the township of North Bergen, in the county of Hudson and State of New Jersey."
By other clauses in the will testatrix bequeathed $200 for maintenance of a cemetery lot, her diamond earrings, automobile, *Page 439 
and certain household furnishings to two nephews, and made money bequests to various other relatives aggregating $5,500. Among them was one of $2,500 to complainant and one of $1,000 to her brother Adolph Moeckel. She also devised her home to her nephews. Outside of her home her estate consisted only of the furniture, earrings and automobile, together with some other minor jewelry, and two mortgages, that executed by complainant for $5,000 and the other made by her brother Adolph Moeckel for $1,000.
Whether complainant's mortgage was canceled by the will depends upon the construction given to the words "any and all indebtedness" in the second paragraph of the will. The will was executed about one month before the death of testatrix, and therefore her estate was approximately in the same condition at the time of her death as it was at the time of the execution of the will. This circumstance has a direct bearing on the construction of the will since each part thereof is if possible to be so construed as to make it harmonious with other portions of the will, and give effect to all of them. It will be noted that the money bequests aggregate $5,700 and that the only assets out of which they can be paid are the two mortgages including complainant's. If complainant's mortgage be canceled by the terms of the second paragraph of the will and that of Adolph Moeckel be also canceled by the same clause, there is no fund out of which any of the money bequests can be paid. This would mean that the money bequests were a mere empty gesture, without any validity or effect. If the will be given a construction so as to carry out the bequests, which from the language of the will she undoubtedly intended to make, the will must be so construed so as not to provide for the cancellation of the two mortgages.
It will be noted that the second paragraph provided for the cancellation of "any and all indebtedness to me, especially that sum of four thousand five hundred ($4,500) dollars which I advanced to my beloved sister, Selma Ludwig." Here we have general words followed by words relating to a particular indebtedness, namely that of testatrix' sister. There is nothing except the use of the general words themselves *Page 440 
to show that anything more was intended than to release the indebtedness of the sister alone. In the case of Van Slyke v.Van Slyke, 80 N.J. Law 382, the court of errors and appeals held that where a general release was followed by a restricted release the general release did not necessarily operate, but from the balance of the instrument it might be found that only the restricted release was operative. The application of this rule allows the intent of the testatrix in the instant case to limit the cancellation of indebtedness to that of the debt due from her sister, and thereby permit the money bequests to take effect.
At the hearing there was introduced the testimony of the scrivener of the will who testified that testatrix told him what bequests she desired to make. She told him that outside of the personal property specifically bequeathed her entire estate consisted of the property devised by the will and two mortgages, one of $5,000 and one of $1,000. She specifically told him that the bequests were to be paid from the two mortgages. This testimony is in entire accord with a construction of the will which excludes the cancellation of the two mortgages from the release clause in the second paragraph, and enables the money bequests to be paid. This testimony is admissible as showing what the testatrix meant by what she said in the will by the use of the word "indebtedness." It does not contradict the language used by her but shows what she meant by what she did say. Paul v.Paul, 99 N.J. Eq. 498; Von Fell v. Spirling, 96 N.J. Eq. 20.
It appears that it was the intent of the testatrix not to cancel the mortgage. There is nothing in the will itself which negatives this intent. Applying the language of the entire will to the circumstances of her estate, so as to make the money bequests effective, requires a construction which limits the cancellation of indebtedness to that of her sister. A decree will be advised dismissing the bill and finding that the mortgage executed by complainant was not canceled by the will. *Page 441