53 N.J. Super. 396 (1959)
147 A.2d 545
IN THE MATTER OF THE ESTATE OF ISAAC HOFFMAN, DECEASED.
DAVID A. GELBER, AS GUARDIAN AD LITEM, APPELLANT,
v.
YASCHI PAII AND HENRY J. BENDHEIM, EXECUTOR OF THE ESTATE OF ISAAC HOFFMAN, DECEASED, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1958.
Decided January 2, 1959.
*398 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Robert B. Kroner argued the cause for appellant (Mr. David A. Gelber, pro se).
Mr. Saul J. Zucker argued the cause for respondent Yascha Paii (Messrs. Kristeller, Zucker, Lowenstein & Cohen, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The question raised by this appeal is whether or not a bequest of "all of my personal belongings and wearing apparel" includes a 1955 Cadillac automobile.
Isaac Hoffman, a widower, died in California on March 21, 1957. His will, executed on August 1, 1955, bequeathed all his personal belongings and wearing apparel to a cousin, Dr. Yaschi Paii. The residue of the estate was given in trust for the education of two infant relatives, the trust to terminate upon their attaining the age of 21 years. The mother of the residuary legatees was appointed trustee and *399 directed to post a $10,000 bond. Upon the executor, Henry J. Bendheim, was conferred the power to sell realty and dispose of personalties.
Before leaving for California, the decedent had delivered his Cadillac to Dr. Paii for his use and enjoyment during the owner's absence. By agreement, the car has been sold at a public sale for $2,250; the proceeds are being held in a special account, to be disposed of in accordance with the further order of the court.
The matter was heard by the Bergen County Court, Probate Division. The opinion of the trial judge, after reciting that the testator lived alone and had no household goods excepting such as a single man requires, was that Hoffman had intended that Dr. Paii should receive the Cadillac as a "personal belonging." Accordingly, a judgment was entered, from which the guardian ad litem of the residuary legatees appeals.
The appeal has been submitted to this court upon a "Statement of Evidence and of Proceedings," signed by the attorney for the executor, the guardian, and Dr. Paii's attorney, and approved by the trial judge, pursuant to the provisions of R.R. 1:6-2. The statement recounts that Bendheim, an attorney, testified that he had prepared the will on August 1, 1955, at which time a prior will of the testator was destroyed; it concludes by stating that both Dr. Paii and Joseph H. Johnson, Hoffman's landlord, testified that Dr. Paii and his wife had been "extremely attentive to decedent for many years prior to his death  visiting and ministering to his needs regularly at his residence in Englewood."
Considering only the information that appears in the agreed statement of evidence, and particularly that relating to the attentiveness of Dr. Paii and his wife to the testator's needs, and the fact that the decedent had, shortly before his death, entrusted the car to Dr. Paii, we would be inclined to agree with the trial judge's conclusion that Hoffman had intended the automobile to be included in the bequest of his "personal belongings" to Dr. Paii. Nevertheless, the appellant's brief contains certain information bearing on *400 the assets of the estate, and his appendix includes the entire stenographic transcript of the testimony given by Bendheim, the lawyer who drew the will in question, containing proof beyond the content of the agreed statement. A motion was made at the oral argument to enlarge the record on appeal to include this testimony. For reasons later herein to be stated, we are granting this motion.
The witness Bendheim testified that he had drawn a previous will about two years prior to the will which was probated. The second will, which he also drew, was drawn approximately two weeks after the death of Hoffman's second wife. The witness was asked what difference there was in the wording of the two wills. He had no copy of the first will and testified solely from his own recollection and certain notes prepared by his secretary. Bendheim testified:
"Well, from my recollection and notes, Mr. Hoffman came to my office to change his Will because in the first Will that he drew he had specifically given his car to this Doctor Paii, and he wished that to be changed and, as a result, I drew a new Will for Mr. Hoffman which was executed in my office.

* * * * * * * *
When he came in to make the change and re-draft his Will, he then said he wanted his Cadillac car to go into the residue of his estate, and I drew up the Will to the best of my ability."
To the best of his recollection, this change was the only difference between the two wills. The foregoing testimony was given over objection by counsel for Dr. Paii.

I.
It is fundamental that the intention of the testator must be gleaned from the words used in the will itself. In re Armour's Estate, 11 N.J. 257, 271 (1953); Watson v. Brower, 24 N.J. 210, 215 (1957); Guaranty Trust Co. of New York v. Stevens, 28 N.J. 243, 254 (1958); Epstein v. Kuvin, 25 N.J. Super. 210, 212, 36 A.L.R.2d 1320 (App. Div. 1953). But it is equally well established that extrinsic proof of all the circumstances existing at the time of the execution of the will as well as proof of the testator's *401 relevant utterances, except his direct statements of intention, is admissible in explanation of the terms as used. 5 New Jersey Practice (Clapp, Wills and Administration) (1950), §§ 108, 109. The exception excluding direct statements of intention as to the particular will to be construed has itself been qualified by the elusive distinction between patent and latent ambiguities, regenerated by the Armour decision. Latent ambiguities  those which in the words of Lord Bacon "seemeth certain and without ambiguity"  are explainable by parol proof of the testator's direct statements of intention, whether to the scrivener of the will or otherwise. Den ex dem. Cubberly v. Cubberly, 12 N.J.L. 308 (Sup. Ct. 1831); Von Fell v. Spirling, 96 N.J. Eq. 20, 23 (Ch. 1924), modified 97 N.J. Eq. 527 (E. & A. 1925); Annotation, 94 A.L.R. 26, 286 (1935). But patent ambiguities  those which appear ambiguous on the face of the will  do not warrant resort to parol evidence of the testator's expressions of intention. In re Armour's Estate, supra, 11 N.J. at pages 279-284; 9 Wigmore, Evidence (3d ed. 1940), §§ 2471, 2472.
In our view, there can hardly be any doubt that the phrase "all of my personal belongings and wearing apparel" is on its face sufficiently ambiguous with respect to whether it encompasses a Cadillac automobile as to fall within the "patent" variety. Case v. Hasse, 83 N.J. Eq. 170 (Ch. 1914) ("furniture and personal belongings"); Child v. Orton, 119 N.J. Eq. 438, 442 (Ch. 1936) ("personal effects"); Cramer v. Roberts, 19 N.J. Super. 1 (Ch. Div. 1952), affirmed 22 N.J. Super. 330 (App. Div. 1952) ("personal belongings"); Annotation, 75 A.L.R. 113 (1931); Annotation, 80 A.L.R. 941 (1932); 5 New Jersey Practice, op. cit. supra, § 134, p. 318. Accordingly, under the Armour decision, supra, it was error for the County Court to permit the scrivener of the will, Bendheim, to testify that Hoffman had instructed him at the time the will was drafted that "he wanted his Cadillac car to go into the residue of his estate, * * *" See 5 New Jersey Practice, op. cit. supra, § 109, p. 258, and cases cited at note 7. But in view of *402 the fact that the trial judge, in awarding the Cadillac to Dr. Paii, was not moved by this testimony, the error was not prejudicial.

II.
Disregarding, then, the testimony of the draftsman that he had been instructed to include the Cadillac in the residue of the last will, we are still left with the scrivener's testimony that Hoffman had executed a prior will expressly bequeathing the car to Dr. Paii. Consideration of this fact leads to the strong inference that the decedent, by not including this specific bequest in the later will, did not intend the phrase "personal belongings" to have the expansive meaning suggested by Dr. Paii; otherwise, there would have been no necessity for Hoffman to execute a new will.
It has long been the rule in this jurisdiction that a prior revoked will, introduced into evidence, may be consulted as a constructional aid in the search for an intention imperfectly expressed in the terms of a last will. Atterbury v. Stafford, 58 N.J. Eq. 186, 187 (Ch. 1899); Congregational Home Missionary Society v. Van Arsdale, 58 N.J. Eq. 293 (Ch. 1899), affirmed 59 N.J. Eq. 658 (E. & A. 1899); Peckham v. Peckham, 97 N.J. Eq. 174 (Ch. 1925); Crocker v. Crocker, 112 N.J. Eq. 203, 207 (Ch. 1933); Fidelity-Philadelphia Trust Co. v. Jameson, 137 N.J. Eq. 385, 391 (Ch. 1946); Bianchi v. Bedell, 2 N.J. Super. 236, 239 (Ch. Div. 1949). Cf. In re Parker's Will, 47 N.J. Super. 241, 246 (App. Div. 1957), affirmed 26 N.J. 352 (1958). We appreciate that in the instant case the force of that rule is lessened in view of the circumstance that the prior will was destroyed and, as a result, not introduced into evidence. Yet we have the uncontroverted testimony of an apparently disinterested member of the bar of this State (Bendheim) unqualifiedly to the effect that it did, in fact, contain the specific bequest to Dr. Paii. Under the circumstances we are bound to give heavy interpretive weight to that testimony.

*403 III.
But Dr. Paii's counsel strenuously objects to the inclusion and consideration of this testimony on the present appeal in view of the fact that the parties have submitted an agreed statement pursuant to R.R. 1:6-2, which does not refer to this evidence. As noted, the agreed statement contained only the fact that an earlier will had been executed. There is no doubt that the reprinting of Bendheim's testimony in its entirety is a breach of the agreement to submit the appeal on an agreed statement of the evidence and a patent violation of R.R. 1:6-2. The rule itself does not specify the sanctions that may attend its violation; but its very existence is suggestive that the unapproved but tendered transcript of the testimony may be disregarded. The question is whether, under the circumstances of this case, such a course is to be pursued.
In Gibraltar Factors Corp. v. Slapo, 23 N.J. 459, 461, dismissed 355 U.S. 13, 78 S.Ct. 44, 2 L.Ed.2d 20 (1957), it was held that a party's statement of facts would be rejected where there had been submitted an agreed statement. But the case is not controlling, because the facts therein contained were disputed by the adversary and, in any event, did not affect the determination of the sole question presented.
Of greater persuasion is the approach suggested by State v. Leibowitz, 22 N.J. 102, 104 (1956), wherein the defendant's failure to provide an adequate record was deemed a procedural irregularity which would not preclude consideration of the merits. Cf. American Chemical Paint Co. v. Dow Chemical Co., 164 F.2d 208, 209 (6 Cir. 1947), quoted in 7 Moore's Federal Practice (2d ed. 1955), ¶ 75.15, p. 3666; Annotation, 97 A.L.R. 301 (1935). But cf. Bonanno v. Bonanno, 4 N.J. 268, 272 (1950); Yoerg v. Northern New Jersey Mortgage Associates, 44 N.J. Super. 286, 289 (App. Div. 1957); Klein v. Handler, 5 N.J. Misc. 662 (Sup. Ct. 1927); Treasure Imports, Inc. v. Henry Amdur & Sons, Inc., 127 F.2d 3, 4 (2 Cir. 1942), suggesting that *404 the parties ought to be the best judges of what they want to appear in the record.
Furthermore, it has been stated that counsel may not by stipulation deprive the court of a proper record, Keehn v. Laubach, 133 N.J.L. 227, 229 (Sup. Ct. 1945), and suggested that an appellate court will not be bound by a stipulation where the settled case does not truly disclose what occurred in the trial court. Slovak Catholic Sokol v. Foti, 13 N.J. Super. 458, 461 (App. Div. 1951). But see 5 C.J.S. Appeal and Error § 1458, p. 631. A similar thought can be extracted from the wording of R.R. 1:6-2 itself.
"* * * If the statement conforms to the truth, it, together with such additions as the court below may consider necessary fully to present the questions raised by the appeal, shall be * * * certified to the appellate court as the record on appeal * * *." (Emphasis supplied.)
Beyond these authorities, however, the determinant and indeed inescapable circumstance is that in the instant case the real parties in interest are the testator and the infant beneficiaries of the trust. And it would be manifestly unjust to hold that the relatively inconclusive evidence contained in the agreed statement entered into by the guardian ad litem should be deemed the exclusive indicia of the intention of the testator. See Fidelity-Philadelphia Trust Co. v. Jameson, supra, 137 N.J. Eq. at page 387; Anderson v. Anderson, 133 N.J. Eq. 311 (Ch. 1943). Cf. Gnapinsky v. Goldyn, 23 N.J. 243, 248 (1957). We are not to be understood as treating lightly the violation of a rule which has been designed to facilitate and expedite litigation and to avoid undue expense. Cf. Paolercio v. Wright, 1 N.J. 121, 123 (1948). Nor is it in the interests of the sound administration of justice to discourage litigants from placing their complete reliance on the efficacy of the procedure established by R.R. 1:6-2. But in fairness to the testator and to the infant relatives in this case we are compelled to consider all the available competent evidence bearing upon the meaning intended by the phrase "personal belongings."
*405 As noted above, counsel for the guardian ad litem at the oral argument entered an application to enlarge the record on appeal to include Bendheim's testimony. We reserved decision on the motion, pending the submission to us of the entire transcript, including the testimony of Dr. Paii and the decedent's landlord. We now have the transcript and, as already indicated, will grant the motion. There was nothing testified to by Dr. Paii or the landlord to outweigh the fact that the prior will, expressly bequeathing the car to Dr. Paii, had been changed to omit that provision. That circumstance, in our judgment, is sufficiently determinative to resolve the ambiguity in favor of the conclusion that it was not intended that Dr. Paii receive the automobile under the present will.
Accordingly, the judgment is reversed.